## R. S. GILLIAM *vs.* W. S. McJUNKIN.

On the petition of a surety of an administrator to be relieved from his liability as surety, the Judge of Probate, having cited the administrator before him, proceeded to take an account of his administration, and, finding a balance to be due by him, he made an order that the balance be paid into Court, and that the letters of administration be rovoked.  The administrator having failed to comply with the order to pay the money into Court, the Judge of Probate issued a warrant to the Sheriff to arrest and imprison the administrator until he complied with the order.  The Sheriff arrested the administrator under the warrant, and he applied, by writ of *habeas corpus*, to a Circuit Judge, who ordered his discharge, on the ground that his imprisonment was without warrant of law: *Held*, that there was no error in the order of the Circuit Judge.

Where a surety on an administration bond petitions to be relieved from his liability as surety, the Judge of Probate may revoke the letters of administration, or require a new bond to be given, with other sureties, but he cannot give a money decree against the administrator.

A Judge of Probate has no jurisdiction to issue a warrant to arrest and imprison an administrator for failure to comply with the terms of a money decree.

One arrested and imprisoned under a warrant in a civil proceeding, will be relieved from imprisonment by writ of *habeas corpus*, if the Court from which the warrant issued had no jurisdiction to grant it.

BEFORE ORR, J., AT CHAMBERS, COLUMBIA, DECEMBER, 1868.

This case was brought up by writ of error to the Circuit Court of Union County.

R. S. Gilliam, plaintiff in error, was one of the sureties on the administration bond of William S. McJunkin, defendant in error, who was the administrator of William H. Kelly, deceased. On the 16th November, 1868, Gilliam filed a petition in the Court of Probate for Union County, praying to be relieved from his liability as surety. A citation was issued, and, on the same day, both parties appeared before the Judge of the Court, with their respective counsel. An account of the administration was taken, and it appeared that the administrator was indebted to the estate in the sum of $3,634.98. The Judge made an order, by consent, that this sum be paid into Court, on or before the 27th November, 1868, and he revoked the letters of administration. McJunkin having failed to pay the money into Court, on 30th November, 1868, a warrant was issued by the Probate Judge, directed to the Sheriff of the County, commanding him "to apprehend and imprison the said William S. McJunkin in the common jail in said County, until he shall per- form such order, or be delivered by due course of law." The Sheriff having arrested McJunkin under the warrant, he applied for, and obtained, a writ of *habeas corpus*, and, on the return thereto, he moved for his discharge from custody under the warrant. The motion was granted, and an order, with the reasons therefor, filed with the record, as follows:

" It is not necessary to decide, in this proceeding, whether the Probate Judge had legal authority to make the order to pay the money into Court. The uniform practice in the Court of Ordinary in this State, which is abundantly sustained by authority, has been to fix the amount of indebtedness by the accounting, and a decree to pay the same to the parties in interest entitled in law to receive the same, whether it was distributees, or administrator *de bonis non*, if the first administration was revoked, or to creditors. It has not appeared in the argument of counsel or the authorities cited, where an Ordinary has, upon an accounting, adjudged that an administrator should pay the balance found into his Court. The Ordinary's decree, fixing the sum due and requiring its payment, is enforced by an action upon the administration bond in the Court of Common Pleas, which action may be instituted by any party en-

titled to receive all or a part of the sum decreed, and the decree fixes the sum to be recovered.

"It has been expressly ruled, in this State, in case of *Lyles*, Ordinary, vs. *McClure*, 1 Bail., 7, that "the Ordinary is authorized to take and adjust the accounts of administrators, but there his powers end. He has no authority to enforce the performance of any order or decree which he might make." It has likewise been decided that an administrator cannot even be sued on his administration bond until he has been cited to account before the Ordinary, and a decree has been made by that officer. Has the legislation of 186*, organizing Probate Courts, &c., enlarged the powers of the Probate Judge so as to authorize him to enforce a money decree made by him against an administrator, by committing the administrator summarily to jail, on his failure to pay the same on a given day? In cases of indebtedness the higher Courts may render their judgments requiring the defendant to pay what he owes, and execution thereupon issues; but, in such a case, what Judge in South Carolina can order, as part of his judgment, that, if the money is not paid by a given day, the debtor shall be seized and incarcerated in the common jail? Would it be safe or just to adopt a construction of a statute, by implication merely, conferring such extraordinary and arbitrary powers on any judicial or other officer in the absence of positive legislation? But the legislation of 1868 leads the mind to the reverse conclusion, when construed in connection with the laws existing at the date of the enactment.—Acts '68, p. 70. The 39th Section expressly declares "that all laws and parts of laws of the late Provisional Government of South Carolina, relative to the powers, duties and course of procedure of the Courts of Ordinary and Equity, as far as the jurisdiction of said Courts is herein conferred on the Courts of Probate, not inconsistent with the Constitution and this Act, or supplied by it, are hereby adopted and declared to be of force, and applicable to the Courts of Probate," &c. The 12th Section of the same Act is relied upon as conferring upon the Probate Judge the extraordinary and novel power of committing, by warrant, to jail, a debtor administrator, who, upon an accounting before that Court, is found indebted to the estate of his intestate, and who fails to pay the same by a given day fixed in his decree. "If any person shall refuse or neglect to perform any order, sentence or decree of a Probate Court, such Court may issue a warrant, directed to any Sheriff or Constable in the State, requiring him to apprehend and imprison such person in

the common jail of the County, etc., until he shall perform such order, sentence or decree, or be delivered by due course of law." A party unlawfully detaining a will, known to be in his custody, might be the subject of the order, because it is authorized by the statute on the subject; but how could an unfortunate administrator, who had not means to pay, and no friends to pay for him, ever be relieved from such imprisonment by a "due course of law?" The key to the true interpretation of this Section is found in the preceding Section, (11, p. 77): ' Probate Courts may issue all warrants and processes (of what kind ?) *in conformity to the rules of law,* which may be necessary to compel the attendance of witnesses, or to *carry into effect* any order, sentence or decree of such Courts, or the powers granted them by law.'

" The limitation, therefore, on the process to be issued by Probate Judges, is the general law of the land, as modified by the Act of 1868. That Act may be searched in vain to find any new power given to imprison a defaulting debtor, and the Probate Judge is invested with no new power to enforce, by imprisonment, upon his warrant, an administrator found to be a debtor on an accounting which he fails to pay. His decree can only be enforced by suit upon the administration bond of the party found in default or arrear.

" Without undertaking to decide upon the regularity or validity of the decree rendered against the prisoner, in this case, by the Judge of Probate, his warrant for the arrest of the prisoner, and his detention in jail until the decree is paid, is, upon its face, illegal. It is a process unauthorized by law, and is, therefore, void. The detention of the prisoner is illegal, and it is hereby

" *Ordered,* That the prisoner, William S. McJunkin, be forthwith discharged from custody by the Sheriff of Union District, under said warrant by the Probate Judge."

R. S. Gilliam moved this Court to reverse the order discharging the prisoner, upon the following grounds:

1. That as the case discloses a commitment in a purely civil proceeding by a Court of competent authority, and in a matter clearly within its jurisdiction, assuming the judgment upon which the warrant was founded to have been erroneous, the only remedy was by an appeal, and not by *habeas corpus.*

2. That the Probate Court is not a Court of inferior jurisdiction, but is of co-ordinate jurisdiction with the Circuit Courts, and its proceedings cannot be reversed by a Circuit Judge in vacation, but

only by appeal, in the mode and manner prescribed by the Act of the Legislature creating said Court.

3. Because it is manifest, from the face of the writ under which the prisoner was discharged, that jurisdiction was claimed for it under the statute of the 31 of Charles II, of which our statute is a literal transcript. It is equally manifest that the sole object and design of the writ was the speedy enlargement, upon bail, of persons charged with " *criminal* or supposed *criminal,* matters, where, by law, they are bailable."

4. That the constitutional provision abolishing imprisonment for debt was not intended to apply to the case of a party imprisoned under a warrant issued by a Probate Judge to enforce obedience to an order, sentence or decree pronounced by said Court.

*Munro* for plaintiff in error:

The Probate Court had jurisdiction of the case—Constitution of the State, Art. 4, Sections 1 and 20; Statute at Large of 1868, No. 33, Sections 2 and 4; Code, p. 432, Sections 36, 38, 45, 46 and 71.

That the Probate Court had all the authority in this case that formerly belonged to either the Court of Ordinary or the Court of Equity, or both.—Statutes at Large of 1868, No. 33, Sec. 39; Code, p. 436, Sec. 73.

That the Court of Ordinary had power to make such order as would give relief to the surety.—5 Statutes at Large, 111.

That the Court of Equity had power to relieve against the principal in behalf of the surety.—1 Story's E. J., 327.

That the Probate Court had the right to pass the order against the defendant for the payment of the money adjudged, and to enforce the same by attachment and imprisonment, upon his refusal to comply therewith.—Statutes at Large of 1868, No. 33, Sections 11 and 12; Code, p. 433, Sections 45, 46, 65 and 71; Statutes at Large, Vol. 5, p. 111.

That the Court of Equity had power to enforce payment of money decree by process of contempt.—2 Daniel Chan. Plead. and Prac., 1252.

That the constitutional provision abolishing imprisonment for debt did not affect this case.—Webster's Dict., Title Fraud; 1 Story's E. J., Sections 186 and 256; 3 Black. Com., 154; 2 Williams on Ex'ors, 1529.

That this being a purely civil proceeding, the remedy against any error in the judgment was by appeal, and not by *habeas corpus,* as

claimed, which only applies when a party is charged "with criminal or supposed criminal matter."—Habeas Corpus Act, 1 Brevard's Digest, 394; 3 Black. Com., (Sharwoods) 131 to 135; *Yates* vs. *Lansing*, 4 Johns. R., 357, and 9 Johns. R., 421; *The State* vs. *The Sheriff*, 3 Green, 68; *Ex parte Wilson*, 6 Cranch, 52; *Harvey* vs. *Huggins*, 2 Bail, 252; *Ex parte Gilchrist*, 4 McC., 233; Hurd on Hab. Corpus, 1 Kent Com., 11th ed., 623; *Coon* vs. *Luckey*, 1 Watts, 68; *Hobhouse's* case, 3 B. and Ald., 420.

That a writ of *habeas corpus* cannot be granted when a party has been committed for a contempt adjudged by a Court of competent jurisdiction. Nor in such case can any other Court inquire into the sufficiency of the cause of commitment.—*Ex parte Kearney*, 7 Wheat. R. Cond. Reps. Sup. Court, U. S., 225; 3 American Law Journal, 438; Hurd on Hab. Corpus, 412; *Gist* vs. *Bowman*, 2 Bay, 182.

*Wallace*, for defendant in error :

The warrant in this case is without authority of law, because issued to enforce the performance of an illegal order.

Ordinary has no power to order the funds of an intestate estate to be paid into his Court.

(*a.*) He is required to grant administration.—5 Stat., 108, A. A., 1789.

(*b*) Administrator is the legal owner of intestate property, and derives his right from the law, not from the Ordinary.—*Kirby* vs. *Quinn*, Rice, 267 ; *Crawford* vs. *Elliott*, 1 Bail., 206 and 207 ; *Poog* vs. *Carroll*, Dudley L., 5.

(*c.*) If no administration, Ordinary no right to the possession of intestate property.—*State* vs. *Mitchell*, 2 Bail., 225, A. A., 1857, § 5.

(*d.*) Ordinary prohibited from administering.—A. A., 1852.

(*e.*) Judge of Probate no more power in this respect than Ordinary.—A. A., 1868.

(*f.*) Consent cannot give jurisdiction.—*Gallman* vs. *Gallman*, 5 Strob., 207.

2. The warrant being, therefore, without authority of law, the imprisonment of respondent was illegal, and the remedy by *habeas corpus* the proper one.—2 Black. Com., 130, *et. seq.*

*Steedman*, same side :

The order of the Probate Judge was extra-judicial and void.—A. A., 1868, § 39, 14 Stat., 80 ; A. A., 1789, § 24, 5 Stat., 111 ; A. A., 1839, § 19, 11 Stat., 43.

Condition of administrator's bond.—A. A., 1789, 5 Stat., 110;

*Shelton* vs *Cureton*, 3 McC., 416 ; *Hill* vs. *Calvert*, 1 Rich. Eq., 55 ; *Trimmier* vs. *Trail*, 2 Bail., 485 ; *Waterman* vs. *Brigham & Hudson*, 2 Hill, 512 ; *Owens* vs. *Walker*, 2 Strob. Eq., 289 ; *Cross* vs. *Gabeau & Hunt*, 1 Bail., 214 ; *State* vs. *Baskin*, 1 Strob. L., 37 ; A. A., 1852, 12 Stat., 607 ; *Bigelow* vs. *Stearns*, 19 Johns., 39.

Consent did not confer authority to make the order.— *Coffin* vs. *Tracy*, 3 Cai., 129 ; *Dudley* vs. *Mahew*, 3 Conn., 9 ; *Hyer* vs. *Berger*, Hoff., 1.

The warrant to enforce obedience to his order was unauthorized by law and void.— A. A., 1868, §§ 11, 12, 14 Stat., 77 ; *Lyles* vs. *McClure*, 1 Bail., 7 ; A. A., 1785, 7 Stat., 211 ; A. A., 1811, 5 Stat., 642 ; *State* vs. *Hunt*, 4 Strob., 322 ; *Ex parte Thurmond*, 1 Bail.

It follows that *habeas corpus* was the proper remedy of the prisoner.— *Mitchell* vs. *Mitcheson*, 1 Barn. and Cress, 513 ; *Bushel's* case, Vaughan, 155 ; *Wood's* case, 3 Wils., 172 ; *Bennac* vs. *The People*, 4 Barb., Sup. Ct., 31 ; 3 Hill, N. Y. Rep., 661, note ; *People* vs. *Cassels*, 5 Hill, N. Y., 165 ; *People* vs. *Tompkins*, 1 Park, 224 ; A. A., 1868, § 21, p. 78 ; Bac. Ab. *Habeas Corpus* B., Vol. 4, Phila. Edit., 1846, p. 572 ; 3 Hill, N. Y. Rep., 652, note.

July 6, 1871.  The opinion of the Court was delivered by

WRIGHT, A. J.  The power of the Judge of Probate to grant relief to sureties of administrators who may conceive themselves in danger of injury for such suretyship, is neither derived specifically from the Act of 21st September, 1868, " to define the jurisdiction and regulate the practice of Probate Courts," (14 Stat. at Large, 76,) or from the Code adopted on the 1st of March, 1870.  The 39th Section of the said Act declares of force "all laws and parts of laws of the late Provisional Government of South Carolina relative to the powers, duties and course of procedure of the Courts of Ordinary and Equity, so far as the jurisdiction of the said Courts is herein conferred on the Courts of Probate, not inconsistent with the Constitution and this Act, or supplied by it."  This leaves of force the Act of 1789, (5 Stat. at Large, 111,) which provides for relief to sureties for administrators who conceive themselves in danger of being injured by such suretyship, by authorizing them "to petition the Court to whom they stand bound for relief, which Court shall summon the administrator to appear, and thereupon make such order or decree as shall be sufficient to give relief to the petitioner."

The Act of 1839 (11 Stat. at Large, 43,) is to the same effect, and

adds, in positive terms, a direction that the order for the relief of the petitioner shall "not impair or affect the rights of the parties interested in the estate." This restriction was implied by the Act of 1789, as the order or decree, by which it intended to afford the means to relieve the surety from the obligation which the bond imposed, could not operate to affect or impair liabilities already incurred by the default of the administrator. The Ordinary, on such application, had no discretionary power.

The right of the surety to be relieved from future liability on his own motion, and without proof of any danger, was secured by the Act.—*McKay* vs. *Donald*, 8 Rich., 331. The administrator is necessarily a party to the proceeding, for the order or decree of the Court is to operate upon him. As a mere matter of prudence, it might not be improper for the Ordinary to take the accounts of the administrator, if he is willing to submit them, but entirely unnecessary, so far as the distributees are concerned, for they, not being parties, will not be bound by the result. If, on a proceeding against the administrator by the distributees for an account, it should appear that he was indebted, at the time of the discharge of the surety, in an amount exceeding that found by the Probate Judge, the surety could not set up the account first found in bar of the excess which the administrator on such proceedings might be decreed to owe to the parties interested in the estate. The relief can be granted by a revocation of the letters of administration, and a grant of administration "*de bonis. non,*" or the administrator could be required to give a new bond, with new sureties.—*Ordinary* vs. *Bigham and Hudson*, 2 Hill, 515; *Owens* vs. *Walker*, 2 Strob. Eq., 292. Under the Acts of 1789 and 1839, and the practice which has been adopted to carry out the relief they proposed, it was not necessary that any account should be taken, or a money decree established against the surety.

The Probate Judge here went, however, still further, and required the administrator to pay the amount so found due into the hands of the Court. What disposition, on receiving it, could he make of it? Had the debts all been paid, so that partition of it could be ordered between the distributees? and, if so, from what source would the Probate Judge derive his power to make it? Were the distributees bound by the account? or was the surety, in whose favor relief was prayed, discharged from all liability to them by an *ex parte* decree finding the amount due?

It is not necessary to inquire, if the fund paid to the Probate

29A

Judge had been wasted by him, or lost by his default, whether the surety would have been discharged either as to the creditors or the distributees of the intestate?

The 20th Section of the declaration of rights in the State Constitution provides " that no person shall be imprisoned for debt, except in case of fraud." If the mere non-payment of a sum of money is to be construed as fraud, within the language of the Constitution, the humane and liberal provisions which it made against imprisonment for debt would have been not only senseless and unmeaning, but delusive.

If the Section of the Code referred to in the argument for the motion, had directly authorized the Probate Courts to imprison a party for failure to comply with its orders directing the payment of money, it would have been void and nugatory, because in violation of the Constitution.

No inference, however, can be properly drawn from that Section to justify the conclusion that the Legislature intended to do that which the Constitution in such express terms had prohibited.

The true construction of the said Section is, that imprisonment is allowed in those cases to be directed by Probate Courts to carry out their " orders, sentences and decrees," where it is conformable to the law regulating their procedure in matters (other than the payment of money) where arrest is allowed by positive enactment as the means of compelling obedience to their orders, as, for example, to compel the attendance of witnesses, or deliver a last will and testament wrongfully withheld. We do not think the appellant derives much aid from the case of *Hosack & Blunt, Executors,* vs. *Rogers et al.,* 11 Paige, 603, to which his counsel referred in his argument. The point there, and as to which even the Court *doubted,* arose under a reservation of the 2d Section of the non-imprisonment Act of the State of New York.

The language of our Constitution, where debt is the foundation of the imprisonment, is without exception, save as to fraud.

It is objected against the order of the Circuit Judge, " that this being a purely civil proceeding, the remedy against any error in the judgment was by appeal and not by *habeas corpus.*"

We do not know of any statute by which the Judges of the Supreme Court are prohibited from exercising the common law jurisdiction in regard to the writ of *habeas corpus.* The high prerogative writ of *habeas corpus* applies " to all manner of illegal confinement." A party committed for a contempt, adjudged by a Court

of competent jurisdiction, will not be discharged under it. If, however, the alleged contempt is for disobedience of an order in which the Court, in the matter before it, was without jurisdiction, the Court having the right to grant the writ may inquire into the legality of the caption and detention. The Probate Court had authority to extend the relief prayed for in the petition of the surety; but all the relief it could grant was to revoke the letters of administration and grant them anew.

Its power there terminated. The order to pay into Court what was supposed to be due by the administrator was without authority, null and void, and the process to arrest was founded on the order.

The power of one Court to enquire into the sufficiency of an arrest on the process of another, has been fully considered in *James* vs. *Smith*, (ante, p. 183.) In a matter clearly within its jurisdiction, the action of one Court is beyond the control of that of any other, save by way of appeal, where that mode of revision is provided by law.

Where, however, a Court, in so important a matter as that which affects personal liberty, oversteps the limits of its authority, and endeavors to enforce obedience to its unauthorized acts, it would be a reflection on the administration of public justice if there was no jurisdiction to which the imprisoned citizen could resort for enlargement. If the order of the Probate Judge was without jurisdiction it is at least doubtful whether the Circuit Court could entertain an appeal from it, for the 21st Section of the Act of 1868, (already referred to,) gives "appellate jurisdiction to the Circuit Court where the matters were originally within the jurisdiction of the Probate Court."

It is ordered and adjudged that the order of the Circuit Judge be affirmed and the motion dismissed.

*Willard*, A. J., concurred.

*Moses*, C. J., absent at argument.